IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGINA COSTA | : | CIVIL ACTION |
| | : | |
| v. | : | No. 20-1851 |
| | : | |
| GENESIS ADMIN. SERVICES, LLC | : | |

### MEMORANDUM

**Chief Judge Juan R. Sánchez**                                            **March 30, 2022**

      Plaintiff Regina Costa brings this employment discrimination action against Defendant Genesis Administrative Services, LLC ("Genesis"). Costa brings claims under the Americans with Disabilities Act ("ADA") and equivalent claims under the Pennsylvania Human Relations Act ("PHRA") for disability discrimination, hostile work environment, failure to accommodate, and retaliatory discharge. Genesis now moves for summary judgment on all claims. Because the only factual disputes relate to Costa's failure to accommodate claims, the Court will deny the motion with respect to Counts V and VI and grant the balance of the motion.

**BACKGROUND**[1]

      Genesis operates skilled nursing, long-term, and senior living facilities around the country. Regina Costa worked in Genesis's "center support" group, which provides information technology support services to Genesis employees. Costa started working at the company in 2005 and was a part-time employee working four days each week. Although Costa's work arrangements evolved over the years, she began working remotely in 2014.

      The facts alleged relate almost exclusively to Costa's failure to accommodate claims. In 2017, Genesis implemented a new telework policy that required remote employees like Costa to attend training and development events. These events occurred in the office and therefore, even

---

[1] The following facts are undisputed except where expressly stated otherwise.

remote employees would be required to attend the in-person trainings. On January 11, 2018, Genesis informed Costa of the new policy and that she would be required to attend the training events. Because Costa was a part time employee, the policy required her to come to the office on Wednesdays. She was permitted to work from home for the remaining three days each week.

When Genesis informed Costa of the new policy, she claimed it would pose a hardship. She informed the human resources department that she had "already established [her] work routine around this schedule and this change would cause a hardship for [her] family." Def.'s Statement of Material Facts ("DSMF") ¶¶ 20–21. The human resources department inquired as to the nature of this hardship, and Costa explained that her husband traveled for work, and it would be difficult to arrange childcare. Human resources then rejected her request to be exempted from the new policy. Costa then offered a new explanation, that she had previously been "bullied" by certain colleagues and she decided to work from home in order to avoid this abuse. *Id.* ¶ 24. The human resources department investigated Costa's allegations and informed her that the complained-of coworkers had since left the company with the exception of one supervisor, who was on the verge of retirement. *Id.* ¶¶ 27–37. Throughout this process, Genesis permitted Costa to continue to work from home despite the policy having taken effect.

Costa then informed Genesis, for the first time, of her alleged disability. She told Genesis that she had an anxiety disorder that necessitated her working from home. Genesis asked for more information about Costa's condition. It also sent Costa information from the EEOC explaining the process for identifying her disability, evaluating potential accommodations, and explaining the interactive process. On February 19, 2018, Costa informed the company that she had sent the paperwork to her doctor and was awaiting a reply. On February 21, 2018, Genesis's human resources department received a letter from Costa's provider stating Costa had "anxiety with panic

attacks." The human resources department responded to the provider directly and asked for additional information about the duration and frequency of the disability, the limitations this disability imposes on Costa's major life activities, and what accommodations would be necessary. DSMF ¶ 47. Costa's provider declined to answer these questions and determined that the provided information sufficiently justified an accommodation request under the ADA. *Id.* ¶¶ 49–50.

Genesis's human resources department then discussed the issue with Costa, who opined that these questions would best be answered by her medical provider. During this time, Genesis permitted Costa to work from home while human resources attempted to discern information about her request for accommodation. DSMF ¶¶ 62–63; Def.'s Mem. in Supp. of Mot. for Summ. J. 1–2.

Genesis human resources then proposed as an alternative accommodation that Costa could work in the office one day per week, but she would be given a quiet space away from other employees and her supervisor. DSMF ¶ 81. Costa refused this arrangement and argued that allowing her to work in isolation undermined the necessity of her on-site attendance. Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. 39–40. Finally, after roughly two months of back-and-forth negotiation about Costa's disability and requested accommodations, Genesis terminated Costa's employment on March 22, 2018. Def.'s Mem. in Supp. of Mot. for Summ. J. 33. Although the parties disagree about Genesis's motive for Costa's discharge, Genesis has cited instances where other employees received exemptions after complying with the request for additional information about disability-related limitations. *See* DSMF ¶¶ 12–15.

On April 9, 2020, Costa filed suit. Costa brings claims under the Americans with Disabilities Act ("ADA") and equivalent claims under the Pennsylvania Human Relations Act ("PHRA") for disability discrimination (Counts I and II), hostile work environment (Counts III

and IV), failure to accommodate and engage in the interactive process (Counts V and VI), and retaliatory discharge under the ADA and PHRA (Count VII).[2]

**DISCUSSION**

There is no genuine dispute as to the material facts of Costa's discrimination, hostile work environment, and retaliation claims. Genesis is entitled to summary judgment on those claims. There remains, however, a dispute as to the parties' interactive process of identifying reasonable accommodations. The Court is unable to reconcile certain differences between the parties' accounts of this process. These factual matters must be resolved by a jury, and the Court will therefore deny the motion with respect to those counts.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Inds. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The moving party bears the initial burden of showing that there are no genuine issues of material fact, even viewing the evidence in the light most favorable to the non-moving party.

---

[2] The Complaint contains seven Counts, some of which contain overlapping legal claims. For example, Count III is entitled "ADA – Disability Discrimination (Disparate Treatment)/Hostile Work Environment" and appears to allege not only disparate treatment discrimination and a hostile work environment, but also that "Defendant terminated Plaintiff without engaging in the interactive process." Compl. ¶ 53, ECF No. 1. This singular count could be interpreted as alleging a number of claims. Therefore, the Court conservatively interprets the Complaint to state the causes of action as enumerated above.

*Anderson*, 477 U.S. at 246. Thereafter, "the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial." *Shramban v. Aetna*, 262 F. Supp. 2d 531, 535 (E.D. Pa. 2003). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. To defeat summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts' and must produce more than a 'mere scintilla of evidence in its favor' to withstand summary judgment." *Shramban*, 262 F. Supp. 2d at 535 (quoting *Anderson*, 477 U.S. at 249).

The Americans with Disabilities Act (ADA) prohibits employers from "discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §§ 12112(a), 12111(2), (5), (7). "Disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . a record of such an impairment; or . . . being regarded as having such an impairment." 42 U.S.C. § 12102(1). A disabled individual is otherwise "qualified" if that person, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

In addition to authorizing claims for discrimination, hostile work environment and retaliation, the ADA also requires employers to "make[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." *Id.* § 12112(b)(5)(A).

5

Under the ADA, anything more than a "de minimis cost or burden" constitutes "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).

The analytical frameworks for an ADA claim and accompanying PHRA claim are the same, and the Court may "dispose of both ADA and PHRA claims on the same grounds." *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 142 n.5 (3d Cir. 2011) (citing *Rinehimer v. Cemcolift Inc.*, 292 F.3d.375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim")). Therefore, the Court addresses Costa's ADA and PHRA claims in tandem.

Even assuming Costa has made a prima facie showing, Genesis has presented a legitimate nondiscriminatory reason for denying accommodation and Costa has failed to show this reason was pretextual. Under the ADA, a prima facie case of discrimination requires a plaintiff to show she is (1) disabled within the meaning of the ADA, (2) can perform essential functions of her job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result of her disability." *Drummer v. Trustees of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 682 (E.D. Pa. 2017) (citing *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) and *Gaul v. Lucent Technologies Inc.*, 134 F.3d 576 (3d Cir. 1998)).

ADA discrimination claims are subject to the *McDonell Douglas* burden-shifting analysis. *See Walton v. Mental Health Ass'n of Southeastern Pennsylvania*, 168 F.3d 661, 667–68 (3d Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Once the employee has established a prima facie case of discrimination, "the burden of production shifts to the employer to 'articulate some legitimate nondiscriminatory reason for the employee's rejection.'" *Id.* "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate

reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005) (citations and quotations omitted).

The Court's role is not to second guess the wisdom of employment decisions or policies. *See, e.g.*, *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 154 (3d Cir. 2017) ("[W]e 'do not sit as a super-personnel department that reexamines an entity's business decisions . . . [O]ur inquiry is limited to whether the employer gave an honest explanation of its behavior.'") (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995)). Failure to follow company policy may serve as grounds for legitimate, nondiscriminatory termination. *See e.g.*, *Terrell v. Main Line Health, Inc.* 320 F. Supp. 3d 644, 651 (E.D. Pa. 2018).

A reasonable jury could find that Costa was disabled for purposes of the ADA, that she could perform the essential functions of her position with or without reasonable accommodations, and that she experienced an adverse consequence as a result of her disability. In other words, Costa has made a prima facie showing of ADA discrimination. The Court has reservations about the precise nature of Costa's alleged disability, whether she could perform her duties with reasonable accommodation, and whether she was terminated as a result of her disability. The Court will not go so far as to say that *no* reasonable jury could find Costa met her burden. However, Genesis has presented a legitimate reason for terminating Costa—she was unable to comply with their training policy. Costa was not only unable to comply with the training policy, but she appeared unwilling to come to work altogether. Assuming Costa made a prima facie showing, Genesis has offered a legitimate nondiscriminatory reason for her termination. Costa has offered no explanation for her

7

termination being a pretext for disability discrimination. Genesis is therefore entitled to summary judgment on Counts I and II.

Costa's hostile work environment claims also fail. To state a claim under the ADA for hostile work environment, an employee must allege (1) that she suffered intentional discrimination because of her disability; (2) the discrimination was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment; (3) the discrimination detrimentally affected her; and (4) it would have detrimentally affected a reasonable person in her position. *See Mercer v. Southeastern Pa. Transit Auth.*, 26 F. Supp. 3d 432, 443 (E.D. Pa. 2014) (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)). In examining alleged "severe or pervasive" discrimination in a workplace, the court must "'look[ ] at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787–88 (1998)).

Whether an environment is "hostile" depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). "The inquiry into whether the discriminatory or retaliatory environment was severe or pervasive recognizes that less severe isolated incidents . . ., when taken together as part of the overall scenario, evidence retaliatory animus and one severe incident may be enough to create a hostile work environment." *Komis v. Sec'y of the United States DOL*, 918 F.3d 289, 293–294 (3d Cir. 2019) (internal quotations omitted). "It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as plaintiff did, that the

harassment so altered working conditions as to make it more difficult to do the job." *Harris*, 510 U.S. at 25.

Costa presents almost no evidence of severe or pervasive hostility. Even assuming Costa was discriminated against—and the Court finds no reasonable jury could find that she was—this alleged discrimination was limited to confidential communications with the human resources department. Moreover, the conversations relating to her alleged disability were limited to identifying reasonable accommodations for her alleged disability. Although Costa alleges she was previously "bullied" by her coworkers, these allegations have nothing to do with her anxiety or panic attacks. There is no basis for a reasonable jury to find Genesis harbored a hostile work environment, and Genesis is therefore entitled to summary judgment on Counts III and IV.

Costa's ADA retaliation claim also fails because Genesis offered a legitimate reason for her termination, which was significantly removed from any protected activity. The ADA prohibits an employer from retaliating against an employee for opposing any act made unlawful by the statute. 42 U.S.C. §12203 (a)–(b). To establish a prima facie retaliation claim, a plaintiff must show: (1) she engaged in protected employee activity; (2) she suffered adverse action by the employer either after or contemporaneous with this protected activity; and (3) a causal connection between her protected activity and the employer's adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Mere speculations of retaliation are insufficient to defeat summary judgment. *See, e.g.*, *Boyle v. City of Philadelphia*, 476 F. Supp. 3d 101, 111 (E.D. Pa. 2020) ("[I]t is well-settled that the party opposing summary judgment 'may not rest upon the mere allegations or denials' of the pleading, but instead 'must set forth specific facts showing that there is a genuine issue for trial.'") (quoting *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001)). To demonstrate causation, a plaintiff must generally point to temporal proximity that is "unusually

suggestive" of discriminatory or retaliatory motive. *Krouse*, 126 F.3d at 503. In the absence of suspicious timing, a plaintiff must offer "circumstantial evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

Costa's informal EEOC communication may constitute a protected activity, but there is no evidence of a retaliatory motive. Genesis terminated Costa six weeks after her initial accommodation request, and roughly one-month after her discussion with the EEOC representative. DSMF ¶¶ 83–86. *See Thomas-Taylor v. City of Pittsburgh*, 605 F. App'x 95, 99 (3d Cir. 2015) (one-month gap "is not close enough to support a finding of causation without more"). Only one human resources professional knew of the EEOC interaction, and she stated the discussion had no bearing on the termination decision because Costa acted within her rights as an employee. *Id.* ¶ 55. Without facts to corroborate arguments about temporal proximity, there exists no other evidence of retaliation because human resources personnel in fact recommended Costa consider the EEOC guidance. The Court will therefore enter judgment for Genesis on Count VII.

Costa's failure to accommodate claims however, present genuine issues of material fact that should be determined by a jury. To establish a prima facie claim of failure to accommodate, a plaintiff must show that (1) she was disabled, and her employer knew it; (2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

The ADA provides that an employer discriminates against a qualified individual with a disability when the employer does "not make reasonable accommodations to the known physical or mental limitations" of the individual unless the employer can demonstrate that the

"accommodation would impose an undue hardship on the operation of the business" of the employer. 42 U.S.C. § 12112(b)(5)(A).

"Reasonable accommodations" are defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). A reasonable accommodation further includes the employer's reasonable efforts to assist the employee and communicate with the employee in good faith, under what has been termed a duty to engage in the "interactive process." *See Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 330 (3d Cir. 2003) (citing *Taylor v. v. Phoenixville Sch. Dist.*, 184 F.3d 296, 311 (3d Cir. 1999) (quoting *Mengine v. Runyon*, 114 F.3d 415, 419–20 (3d Cir. 1997) ("As we have noted here and elsewhere many times, both the employer and the employee have a duty to act in good faith once the interactive process begins."))).

The parties disagree as to whether Genesis had sufficient notice of the limitations imposed by Costa's disability and whether Genesis' alternative accommodation was reasonable in the context of what human resources knew about Costa's condition. The ADA requires "employers to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C § 12112(b)(5)(A). This case adds an additional layer in that it appears Costa expected Genesis to communicate with her healthcare provider(s) directly.

Costa verbally disclosed weight loss, sleep troubles, and physical sickness as anxiety-related limitations on major life activities, and can at least point to documented notes from March 1, 2018, to create a genuine issue of material fact for the failed accommodation claims. Genesis also clarifies that Costa was only terminated after her failure to provide medically justified

11

responses to questions about the limitations imposed by her anxiety and panic attacks. If Costa had provided the additional information to human resources, then her accommodation request could have been granted. Three other physically impaired employees received accommodation after complying with Genesis's request in this regard. Genesis permitted Costa to work-from-home, gave her extended deadlines for submitting limitation-specific documentation, and offered an alternative accommodation. This creates a factual dispute sufficient to survive summary judgment. The motion will therefore be denied with respect to Counts V and VII.

**CONCLUSION**

The Court will grant Genesis's motion for summary judgment with respect to Counts I, II, III, IV, and VII. There are disputes as to the material facts of the interactive process that could lead a reasonable jury to find for Costa on Counts V and VII. The Court will therefore deny Genesis's Motion as to those counts.

An appropriate order follows.


BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.